**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DONALD RAY LOGSDON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 21-253-KHV** |
| | ) | |
| **UNITED STATES MARSHAL SERVICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Donald Ray Logsdon, Jr. filed suit pro se against the United States Marshal Service (USMS) and three of its officers (Phillip Gilliam, Jere Smith and Cody Vaughn), alleging excessive force during his arrest in March of 2020.   Plaintiff asserts his claim under Bivens v. Six Unknown Agents of Fed. Bur. Of Narcotics, 403 U.S. 388 (1971).   On March 3, 2022, the Court dismissed the USMS.   See Order (Doc. #43).   This matter is before the Court on Defendant Gilliam, Smith, And Vaughn's Motion To Dismiss (Doc. #87) filed July 5, 2022 and plaintiff's Notice (Doc. #93) filed August 18, 2022, which the Court construes as a motion to strike Exhibit A to Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87).   For reasons stated below, the Court overrules both motions.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.   Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).   To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.   Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007).   To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.   Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678.   Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.   Id. However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557).   A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.   Id.   Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.   Id. at 679.   The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.   Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

The Court construes plaintiff's pro se complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers.   Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).   The Court does not, however, assume the role of advocate for a pro se litigant.   Id. A pro se litigant must "follow the same rules of procedure that govern all other litigants."   Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994).

-2-

## **Factual Background**

Plaintiff's complaint, as supplemented by the documents subject to judicial notice,[1] alleges as follows:

On March 5, 2020, Deputy U.S. Marshals Gilliam, Smith and Vaughn executed a state court warrant for plaintiff's arrest on a charge of assault with a dangerous weapon. Defendants secretly approached plaintiff after dark while he was working on a generator outside at a friend's house. Without announcing their presence, Gilliam ran up behind plaintiff and kicked him in the face, which left him unconscious. For some two minutes, Gilliam, Smith and Vaughn took turns stomping on plaintiff, who never attempted or even had an opportunity to resist.

On October 14, 2020, plaintiff pled guilty to one count of possession of a firearm and ammunition by a convicted felon. Specifically, plaintiff admitted that on March 5, 2020, he unlawfully possessed a .38 Special caliber revolver and five rounds of ammunition.

Defendants ask the Court to dismiss plaintiff's complaint because (1) Bivens does not provide a remedy for his allegations that Deputy U.S. Marshals used excessive force and (2) they

---

[1]   Generally, when deciding a motion to dismiss under Rule 12(b)(6), the Court may not look beyond the four corners of the complaint. Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001). One exception to this rule permits the Court to consider facts which are subject to judicial notice. See Fed. R. Evid. 201(b) (judicially noticed fact must be one not subject to reasonable dispute because it is generally known within territorial jurisdiction of trial court or capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned). Here, at defendants' request, the Court takes judicial notice of several documents from a related criminal proceeding in United States v. Logsdon, E.D. Okla. No. CR-20-29-JFH, including plaintiff's Petition To Enter Plea Of Guilty And Order Entering Plea, the Transcript of Change Of Plea, and the Warrant for plaintiff's arrest, attached as Exhibits A, B and C to Defendant Gilliam, Smith, And Vaughn's Motion To Dismiss (Doc. #87). See Trusdale v. Bell, 85 F. App'x 691, 693 (10th Cir. 2003) (judicial notice of district court records concerning plaintiff's criminal conviction); St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of proceedings in other courts if proceedings have direct relation to matters at issue).

are entitled to qualified immunity.

**Analysis**

**I.      Availability Of <u>Bivens</u> Remedy**

Defendants ask the Court to dismiss plaintiff's complaint because <u>Bivens</u> does not provide a remedy for his allegations that Deputy U.S. Marshals used excessive force.   In <u>Bivens</u>, under general principles of federal jurisdiction, the Supreme Court created a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations.   <u>Egbert v. Boule</u>, 142 S. Ct. 1793, 1802 (2022) (citing <u>Bivens</u>, 403 U.S. at 397 and <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017).   After <u>Bivens</u> was decided in 1971, the Supreme Court created new causes of action in only two other circumstances: (1) a sex discrimination claim for a former congressional staffer under the Fifth Amendment and (2) an inadequate care claim for a federal prisoner under the Eighth Amendment. <u>Egbert</u>, 142 S. Ct. at 1802 (citations omitted).

To determine whether plaintiff has stated a claim under <u>Bivens</u>, the Court applies a two-step inquiry.   <u>Id.</u> at 1803.   First, the Court determines whether plaintiff's complaint alleges facts which present a "new <u>Bivens</u> context," that is a context "'meaningful[ly]" different from the three cases in which the Supreme Court has implied a damages action.   <u>Id.</u> (quoting <u>Ziglar</u>, 137 S. Ct. at 1859–60).   Examples of how a case might differ in a meaningful way include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence

of potential special factors that previous <u>Bivens</u> cases did not consider."   <u>Ziglar</u>, 137 S. Ct. at 1860.   Second, if plaintiff's claim presents a new context, the Court cannot recognize a <u>Bivens</u> remedy if "special factors" indicate that "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"   <u>Egbert</u>, 142 S. Ct. at 1803 (quoting <u>Ziglar</u>, 137 S. Ct. at 1858).

Here, plaintiff alleges that even though he did not know officers were present and had no opportunity to resist, Gilliam ran up behind him and kicked him in the face, and that while he was unconscious, Gilliam, Smith and Vaughn took turns stomping on him for some two minutes. Plaintiff's complaint asserts facts that are not meaningfully different than the circumstances in <u>Bivens</u>.   Both cases involve rank-and-file federal law enforcement officers making arrests.   The constitutional right under the Fourth Amendment to be free from excessive force during an arrest and the legal mandate which governs the officers' conduct are the same in both cases.   <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) ("*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach") (emphasis in original).   The Supreme Court and the Tenth Circuit have provided extensive judicial guidance on how much force officers can use to arrest an individual.   <u>See</u> <u>id.</u> at 395–97; <u>McCoy v. Meyers</u>, 887 F.3d 1034, 1045–47 (10th Cir. 2018); <u>Casey v. City of Fed. Heights</u>, 509 F.3d 1278, 1281–83 (10th Cir. 2007).   Unlike <u>Egbert</u>, which involved national security considerations raised in an excessive force claim against a Border Patrol agent, plaintiff's case presents a garden variety claim that officers employed "unreasonable force . . . in making the arrest."   <u>Bivens</u>, 403 U.S. at 389; <u>see</u>

Egbert, 142 S. Ct. at 1804–06; see also Hernandez v. Mesa, 140 S. Ct. 735, 739 (2020) ("Unlike any previously recognized Bivens claim, a cross-border shooting claim has foreign relations and national security implications."); Ziglar, 137 S. Ct. at 1860 (claims that challenge confinement conditions imposed on illegal aliens under high-level executive policy created in wake of major terrorist attack on American soil present new Bivens context). Plaintiff's excessive force claim does not go beyond the Bivens context or its "core purpose of deterring individual officers from engaging in unconstitutional wrongdoing." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001).

Defendants argue that plaintiff's specific allegations of excessive force present a new Bivens context because they arrested plaintiff away from his home and pursuant to a duly-issued warrant. The remedy that the Supreme Court recognized in Bivens, however, is not limited to the precise allegations that federal agents employed excessive force during a warrantless arrest of an individual in his home. Instead, Bivens held more broadly that an individual could "recover money damages for *any* injuries he ha[d] suffered as a result of the agents' violation of the [Fourth] Amendment," which necessarily included a remedy for plaintiff's claim of "unreasonable force [that officers] employed in making the arrest." Bivens, 403 U.S. at 389, 397 (emphasis added). A warrant for an arrest does not give officers carte blanche to employ unreasonable force or otherwise disregard the rights of an individual under the Fourth Amendment. In sum, defendants have not shown that the existence of an arrest warrant and the fact that officers arrested plaintiff away from his home are potentially special factors that previous Bivens cases did not consider.[2]

_____

[2] In an unpublished decision, the Tenth Circuit addressed whether Deputy U.S. Marshals were entitled to qualified immunity on plaintiff's excessive force claim brought under

(continued . . .)

Ziglar, 137 S. Ct. at 1860; see Bueno Diaz v. Mercurio, 442 F. Supp. 3d 701, 709 (S.D.N.Y. 2020) (Bivens includes garden variety excessive force cases; location of arrest and existence of warrant are not special factors that Bivens did not consider); Lehal v. Cent. Falls Det. Facility Corp., No. 13CV3923 (DF), 2019 WL 1447261, at *12 (S.D.N.Y. Mar. 15, 2019) (excessive force claim against Deputy U.S. Marshals did not present new Bivens context; location of arrest and existence of warrant are not potential special factors that Bivens did not consider).[3]

Because plaintiff has alleged facts which support an excessive force claim that is not meaningfully different than Bivens, the Court need not assess whether special factors establish that the Judiciary is less equipped than Congress to weigh the costs and benefits of allowing this damages action to proceed.   Cf. Bueno Diaz, 442 F. Supp. 3d at 710–12 (even if excessive force claim arose in new Bivens context, no special factors would counsel hesitation in recognizing

---

[2](. . . continued)
Bivens.   See Serrano v. United States, 766 F. App'x 561, 565–70 (10th Cir. 2019).   In doing so, the Tenth Circuit did not question—and therefore apparently assumed—that Bivens provided a cause of action to an arrestee who alleged that while executing an arrest warrant, officers used excessive force.   Indeed, as to plaintiff's claim that one officer failed to intervene to prevent other officers from using excessive force, the Tenth Circuit held that because such a claim is viable under Section 1983, plaintiff could also pursue such a claim under Bivens.   766 F. App'x at 570.

[3]      Defendants also argue that plaintiff's allegations present a new Bivens context because during the arrest, they found a loaded firearm in his possession.   To establish this fact, defendants rely on plaintiff's guilty plea in his criminal case, which is subject to judicial notice. Plaintiff's plea establishes, however, only that at some time on the day of March 5, 2020, he possessed a firearm and ammunition—it did not address whether officers discovered the firearm and ammunition when they arrested him that day or whether the ammunition was loaded in the firearm.   See Petition To Enter Plea Of Guilty And Order Entering Plea at 2; Transcript Of Change Of Plea at 24–25.   On a summary judgment motion, the Court could potentially make such factual inferences—if not rebutted by plaintiff—but it will not do so for purposes of determining what facts are subject to judicial notice on a motion to dismiss.   In any event, even if officers ultimately discover that an arrestee has a loaded weapon, that fact does not necessarily excuse the use of a particular level of force, especially here where plaintiff alleges that he did not resist and the record does not suggest that officers knew that he had a weapon before they employed force.

Bivens remedy).   The Court therefore overrules defendants' argument that plaintiff cannot state a claim under Bivens.

## II.      Qualified Immunity

Defendants assert that even if plaintiff has stated a plausible claim under Bivens, they are entitled to qualified immunity.   Smith and Vaughn assert that they are entitled to qualified immunity because plaintiff has not alleged their "direct and personal participation in an alleged Fourth Amendment violation."   Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87) at 14.   Gilliam argues that he is entitled to qualified immunity because plaintiff has not alleged an underlying constitutional violation of a clearly established right.   Id. at 15.

In deciding a motion to dismiss based on qualified immunity, the Court considers whether plaintiff has alleged facts which establish a violation of a constitutional right and whether at the time of the alleged misconduct, the right at issue was clearly established.   See Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011).   Whether a right is "clearly established" is an objective test.   A constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."   Est. of Ceballos v. Husk, 919 F.3d 1204, 1215 (10th Cir. 2019) (citations omitted).   The Supreme Court has warned against defining a clearly established right "at a high level of generality" and that the law must be "particularized to the facts of the case," but this does not mean that a right is only clearly established if a case exists that is factually identical.   Id. (citations omitted).   In other words, the "clearly established" prong does not require plaintiff to show that "the very act in question previously was held unlawful."   Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008) (citations omitted).   This makes good sense: if a right is clearly established only when a prior case

presents identical facts, qualified immunity would apply under every different fact pattern.   Under this standard, officials would always be entitled to qualified immunity so long as their actions— no matter how outrageous or harmful—were sufficiently novel.   The Tenth Circuit has therefore explained that the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Fogarty v. Gallegos, 523 F.3d 1147, 1161 (10th Cir. 2008); see Duran v. Sirgedas, 240 F. App'x 104, 127 (7th Cir.), vacated in part on reh'g (July 17, 2007) (citations omitted) ("It would create perverse incentives indeed if a qualified immunity defense could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books.").

     A.    Constitutional Violation

The use of excessive force implicates a person's Fourth Amendment right to be free from unreasonable seizure.   See Graham, 490 U.S. at 394.   The Court evaluates whether the amount of force that an officer used was "objectively reasonable" in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation.   Id. at 397.   Such circumstances include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to flee, (4) whether the officers ordered the suspect to drop any weapons and the suspect's response to any such commands, (5) whether the suspect made any hostile motions with a weapon towards the officers, (6) the distance between the officers and the suspect and (7) the manifest intentions of the suspect.   Id. at 396 (identifying factors (1) through (3)); Est. of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008) (identifying factors (4)

through (7)).   Reasonableness must be determined from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   Graham, 490 U.S. at 396.

As noted above, plaintiff alleges that (1) he had no opportunity to resist because he did not know officers were present, (2) Gilliam ran up behind him and kicked him in the face, which caused him to lose consciousness and (3) while he was unconscious, Gilliam, Smith and Vaughn took turns stomping on him for some two minutes.   Plaintiff's complaint admittedly is brief, but it includes enough well-pleaded facts to permit the Court to infer that all three defendants used force that was not objectively reasonable under the Fourth Amendment.   See Iqbal, 556 U.S. at 678–79.

B.    Clearly Established Law

Because excessive force cases require the Court to conduct an all-things-considered inquiry with "careful attention to the facts and circumstances of each particular case," a previously published opinion rarely will involve the exact same factual circumstances.   Casey, 509 F.3d at 1284 (quoting Graham, 490 U.S. at 396).

Accepting plaintiff's version of the facts in the complaint and based on the state of the law on March 5, 2020, reasonable officers would have been aware that the alleged level of force they used was not objectively reasonable.   Plaintiff alleges that Gilliam knocked him unconscious without his knowledge that officers were even present, so he had no opportunity to resist.   After Gilliam's kick left plaintiff unconscious, all three officers took turns stomping on him.   Despite the fact that officers were executing an arrest warrant for a charge of assault with a dangerous weapon, a reasonable officer would have understood that this "obviously egregious" conduct (both the initial disabling kick without asking plaintiff to surrender and the stomping of plaintiff when

-10-

he was unconscious) was not objectively reasonable.   Fogarty, 523 F.3d at 1161; see Graham, 490 U.S. at 396; see also Wilkins v. City of Tulsa, Okla., 33 F.4th 1265, 1277 (10th Cir. 2022) (pre-2017 precedent clearly established that force against subdued suspect who does not pose threat violates Fourth Amendment); McCoy v. Meyers, 887 F.3d 1034, 1052 (10th Cir. 2018) (obvious to officer that continuing to use force on unconscious, handcuffed and zip-tied arrestee was excessive); Casey, 509 F.3d at 1284 (when officer's violation of Fourth Amendment is clear from Graham itself, a second decision with greater specificity is not required to clearly establish the law).

Because plaintiff has alleged the violation of his clearly established right to be free from the use of excessive force in effecting an arrest, defendants are not entitled to qualified immunity. The Court therefore overrules defendants' motion to dismiss on that ground.

**IT IS THEREFORE ORDERED** that Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87) filed July 5, 2022 is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiff's Notice (Doc. #93) filed August 18, 2022, which the Court construes as a motion to strike Exhibit A to Defendant Gilliam, Smith, And Vaugh's Motion To Dismiss (Doc. #87) is **OVERRULED as moot**.

Dated this 21st day of October, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-11-